UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-80099-AMC-1

UNITED STATES OF AMERICA,
West Palm Beach, Florida
Plaintiff(s),
May 27, 2022
vs.

DANIEL ELIE BOUAZIZ,

Defendant(s). Pages 1 - 37

---

DETENTION HEARING
TRANSCRIBED FROM DIGITAL AUDIO RECORDING
BEFORE THE HONORABLE BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF(S): SARAH SCHALL, ESQ.
UNITED STATES ATTORNEY'S OFFICE
500 S. Australian Avenue
West Palm Beach, FL 33401
786-360-9896
sarah.schall@usdoj.gov

FOR THE DEFENDANT(S): HOWARD J. SCHUMACHER, ESQ.
1 E Broward Boulevard
Fort Lauderdale, FL 33301
954-356-0477
papaschuz_2000@yahoo.com

TRANSCRIBED BY: Joanne Mancari, RPR, CRR, CSR
Court Reporter
jemancari@gmail.com

Thereupon,

the following proceedings were held:

THE COURT: This is case No. 22 8209, United States of America v. Daniel Bouaziz.

Good morning, Mr. Schumacher.

MR. SCHUMACHER: Good morning, your Honor.

THE COURT: May I have an appearance from the government, please.

MS. SCHALL: Good morning, your Honor. Sarah Schall on behalf of the government. Sitting at counsel table with me is special agent Mark Gervasi from the FBI.

THE COURT: Good morning to both of you.

AGENT GERVASI: Good morning, sir.

THE COURT: Is it Bouaziz? Have I pronounced that correctly?

THE DEFENDANT: Yes, your Honor. It is.

THE COURT: All right. Good morning.

Mr. Schumacher, do you want to formally enter your appearance?

MR. SCHUMACHER: Yes, Judge. Howard Schumacher. I previously entered a temporary appearance for Mr. Bouaziz, your Honor.

THE COURT: Is that still your status, temporary status?

MR. SCHUMACHER: Yes, your Honor.

THE COURT: OK. Very well. And have we set a status re counsel to see if we can finalize those arrangements?

MR. SCHUMACHER: Sure.

THE COURT: I mean has that already been done, or no?

MR. SCHUMACHER: No, your Honor.

THE COURT: OK. But you said you already entered it. I guess you entered it on the docket.

MR. SCHUMACHER: Yes, sir.

THE COURT: I see. I apologize. OK.

How much time do you think you'll need, Mr. Schumacher, Mr. Bouaziz, to reach an agreement as to whether you will be able to retain Mr. Schumacher as permanent counsel?

MR. SCHUMACHER: Judge, two weeks should be adequate.

THE COURT: OK. Ms. Schall, does that give you enough time to do what you need to do on your side?

MS. SCHALL: Yes, your Honor.

THE COURT: OK. Good. All right. So what I will do, actually, is I will set two weeks from today, which is June the 10th, I am going to set the status re counsel, possible arraignment, and also preliminary hearing.

MR. SCHUMACHER: Judge, could I have one date either side of that?

THE COURT: Sure.

MR. SCHUMACHER: I have a multi-defendant sentencing

on that day.

THE COURT: Sure.

Ms. Schall, is either the 9th or the 11th better for you? The grand jury meets on other dates.

MR. SCHUMACHER: The 11th would be a Saturday, your Honor. Could we do the 13th, your Honor?

THE COURT: Monday the 13th?

MR. SCHUMACHER: Yes.

THE COURT: Ms. Schall.

MS. SCHALL: Your Honor, we would ask for the maximum time available. I don't believe we are going to be asking for detention for this defendant.

THE COURT: So you are asking for the 21 days.

MS. SCHALL: Yes, your Honor, please.

THE COURT: So the 17th, Mr. Schumacher, does that one work for you?

MR. SCHUMACHER: Yes, sir. That would be fine, Judge.

THE COURT: We will set it for the 17th, then, for preliminary hearing.

MR. SCHUMACHER: Sorry, Judge. I'm just looking at that.

THE COURT: No problem.

MR. SCHUMACHER: No, Judge, I'm out of town that day, your Honor.

THE COURT: Do you want the 16th or do you want the --

MR. SCHUMACHER: 15th, your Honor.

THE COURT: Ms. Schall, does the 15th give you enough time?

MS. SCHALL: Your Honor, I believe that should be acceptable. If there are any issues, I will speak with defense counsel.

THE COURT: OK. We will set it for the 15th, then, for a status re counsel, possible arraignment, and possible preliminary hearing.

MS. SCHALL: Thank you, your Honor.

THE COURT: So, Mr. Bouaziz, let me just explain. Right now you are charged with a criminal complaint. OK. So no independent body has evaluated probable cause in this case other than the officer signed it and a judge reviewed it.

You have the right under the Constitution to have the grand jury, an independent body of citizens, determine if there is probable cause. The government is entitled to 21 days to either present the case and have the grand jury vote on it or come to court and have a hearing and prove probable cause.

Almost always they will return the indictment before the probable cause hearing, but you do at least have a right on have a probable cause finding done.

Do you understand? You have to say yes or no.

THE DEFENDANT: Yes, your Honor.

THE COURT: OK. So we have set the date for that.

And also hopefully by then you can make arrangements to keep Mr. Schumacher on the case because we can't arraign you until you have a permanent lawyer. The arraignment is the formal not guilty plea. So until you have a formal arrangement.

Of course, Mr. Schumacher, if you could make those arrangements beforehand, just go ahead and enter your permanent appearance.

MR. SCHUMACHER: Yes.

THE COURT: OK. Great. So I got a little bit out of order, so let me go back a step.

Mr. Bouaziz, if you could just raise your hand.

Do you swear or affirm that any statements you choose to make here this morning are the truth, the whole truth, and nothing but the truth?

THE DEFENDANT: I do.

THE COURT: OK. Do you understand that by taking that oath you have sworn to tell the truth and if you were to intentionally lie to me, you could be committing a new crime which is punishable by up to five years in jail?

MR. SCHUMACHER: Judge, he has a little bit of difficulty hearing. I know I found it kind of light as well, your Honor.

THE COURT: No problem. Is that better if I lean closer to the microphone?

THE DEFENDANT: Thank you.

THE COURT: I do need him to get closer to the mic because I can't hear him either.

So, Mr. Bouaziz, you took the oath which means you have to tell the truth, and if you don't tell me the truth, you could be committing a new crime which is punishable by up to five years in jail.

Do you understand?

THE DEFENDANT: I do.

THE COURT: OK. You are here because the government has brought a criminal complaint charging you with mail fraud and money laundering. I am not asking if you did that. I am simply asking if you understand what the charge is that the government has brought against you.

THE DEFENDANT: I do.

THE COURT: OK. Ms. Schall, what is the maximum penalty?

MS. SCHALL: Your Honor, the defendant is charged with mail fraud, with a maximum penalty of up to 20 years of incarceration, wire fraud, with a maximum penalty up to 20 years of incarceration, laundering of monetary instruments, up to 20 years of incarceration, and money laundering under 1957, which is up to ten years of incarceration.

THE COURT: OK. Mr. Schumacher, is Mr. Bouaziz a U.S. citizen?

MR. SCHUMACHER: He is not, Judge. He is here -- he

is a French and an Israeli citizen. He is here on a B2 Visa, your Honor.

THE COURT: Right. I thought I gathered that from the Pretrial Services report. OK.

So I just need to also advise him that in addition to the penalties that Ms. Schall already explained, a conviction on this charge likely could result in you being deported from the United States.

Do you understand?

THE DEFENDANT: I do.

MR. SCHUMACHER: Judge, I should also mention his wife is present in the court. She is a U.S. citizen. He has a pending application with INS for permanent status here, your Honor.

THE COURT: OK. Very well. Again, first of all, welcome to the family. I am sure he appreciates you being here.

Just so you understand, it wouldn't be part of the sentence in the case because the judge would order deportation, but a conviction, INS could then take that conviction and try to prevent your naturalization. So you just understand that risk exists.

THE DEFENDANT: I do understand.

THE COURT: You understand. OK. Very good.

What is the government's position on a bond in this

case, Ms. Schall?

MS. SCHALL: Your Honor, if I may just briefly address one other thing before we proceed.

THE COURT: Sure.

MS. SCHALL: I don't believe that the government received a copy of the Pretrial Services report. Was one prepared? The court referenced it, but I don't believe I received a copy.

THE COURT: I am sure they will be happy to give you a copy.

MS. SCHALL: Thank you.

Counsel, do you have?

MR. SCHUMACHER: I do.

MS. SCHALL: Thank you.

THE COURT: Take your time, Ms. Schall. See if that changes your position as to what the bond recommendation ought to be. Take your time.

(Pause)

MS. SCHALL: Your Honor, I have had an opportunity to briefly review the Pretrial Services report. I appreciate the court's accommodation there.

The government has been in contact with Mr. Schumacher regarding a possible bond recommendation. I believe that we have agreed that we will propose a 500,000 10 percent bond with a $50,000 cash bond deposit. The defendant's wife will cosign

the bond, and that there will be specific restrictions in regards to the conditions that we are going to recommend be imposed. Those being that the parties will agree that the defendant cannot sell, pledge or hypothecate -- for example, no mortgages, nothing on any of the properties that he owns.

Prior to today's hearing we prepared an asset spreadsheet, that was provided to defense counsel as well as Probation, that highlighted the properties that the government knows that the defendant has property interests in. There may additionally be other properties that were not included in the asset spreadsheet, but we'd ask that any properties that the defendant has a financial interest in not be encumbered.

I would note that the defendant also has a property that he bought, it is the government's understanding, for his wife. We'd ask that that also be included. That is a Harold's Coffee Shop, and that be included as a property that could not be encumbered.

We'd also ask that the defendant be compliant with tax and financial obligations, not accrue any new debts, and we're asking that he not travel outside of the United States during the pendency of this case.

Your Honor, I do recognize that that is an issue that I believe Mr. Schumacher would like to be heard about. I can tell the court that there were -- if the court would like me to proffer a little bit, I can talk a little bit about the

background of the case and what has led us here today.

THE COURT: I have read the complaint, so I'm familiar with the facts in the complaint.

Why don't you just put on the record what all the conditions are that the government is asking for. If Mr. Schumacher wants to dispute some or all of them, we will address that and then I will let the government be heard.

MR. SCHUMACHER: Judge, I did hear what Ms. Schall just indicated. The only thing that we are not in agreement with, Judge, and what we have already posited to the government prior to this hearing, and probably what precipitated the timing of the filing of this criminal complaint, was because Mr. Bouaziz's nephew is to be married in Israel. I provided the invitations, the addresses for that.

Additionally, his father passed away last year. His mother is turning 90 or 91. He is not sure. She's had a very hard time. She also lives in Israel. I provided the address for that. I know it is an unusual request, Judge, but I would like to be heard on that, your Honor.

THE COURT: When is it that he is proposing to take the trip?

MR. SCHUMACHER: Judge, the invitation, the first day -- it is over several days. It is a three-week period, but the first date would be the 31st of May, your Honor.

THE COURT: May. OK. So Monday?

THE DEFENDANT: Yeah.

MR. SCHUMACHER: Is that Monday or Tuesday?

THE COURT: Tuesday, I guess.

MR. SCHUMACHER: Judge, just so that you know, Mr. Bouaziz, his art galleries were raided back in December pursuant to a search warrant. I was in contact immediately with Ms. Schall, and he agreed to voluntarily turn over both his Israeli and his French passport to the government at that time as a concession for being allowed to surrender at some later point in time should the case move forward towards either a criminal complaint or indictment, as well as agreeing to a reasonable bond.

THE COURT: OK. Ms. Schall.

MS. SCHALL: Your Honor, obviously there has been a change of circumstances. We were notified on Friday of the defendant's interest in traveling overseas. We were advised that the defendant at that time had not purchased any airline tickets for this upcoming purported wedding.

The change of circumstances being that the criminal complaint -- excuse me, the search warrants that were executed were predominantly based on a review of financial records, the government's belief that there was money laundering that had been occurring within the defendant's financials as a result of the fraudulent sale of artwork and an undercover sale, a sale of art to an undercover agent. Thereafter, as the government

suspected, we identified particular victims and victims that were identified, at least are named in the criminal complaint.

The reason I bring that up, your Honor, is that the defendant now stands before the court where he is looking at a significant term of incarceration. So that raises the concern that there are not -- that this is a reasonable condition to assure that he remains in the United States to face the charges that are before him.

The government has taken a look at the guidelines for the defendant just to educate the court about what the defendant is possibly looking at. Just as a bare minimum, with six victims and an intended loss, for example, the defendant, the government proffers, was intending to sell at least $22 million of art, of fraudulent art, and that would increase him from a base of 7., adding 20 levels with the actual loss just named in the complaint, we are talking about the victims that were referred to in the complaint, is approximately $800,000. So giving the defendant the benefit of that, that would be an increase of 14 levels. So the defendant is looking at a level 21 offense level, and that is a period of 37 to 46 months of incarceration just as a base.

So we are looking at someone who is a businessman out in the community. The government's concern is that he is running a business that is a fraudulent business, and he has extreme financial resources in which not to return to the

United States if he is given permission to go overseas.

The court is well aware I'm sure that there are countries outside of the United States that won't necessarily make extradition easy or possible for the United States to get the defendant back if he chooses to flee.

The defendant has, as the defense counsel has proffered, both an Israeli and a French passport. Those passports are currently in the custody of the FBI. If the court rules otherwise we can make those available to the defendant, but we ask that they remain in the custody of the FBI during the pendency of this case.

The defendant, I would touch briefly on the properties that he does have. There's at least 13 properties that we know of, again, tied to also the coffee shop that we talked about. In July he sold a property, and he made $4.4 million in November. He had purchased a property for $3 million. He had purchased another property that he currently lives in. I believe that the defendant was in the process of selling one of those properties. It is a property that is referred to as The Castle. It is a commercial property. We'd ask that that also not be allowed to take place as this case moves forward.

So this is a defendant who comes before the court with considerable means, quite different than many of the defendants that we have seen before the court in other cases. He has a number of vehicles for which he has equity. He has a yacht.

Yachts, I should say. Numerous bank accounts. The bank accounts indicate that at least at the current date he has at least $500,000, $600,000 in cash liquidity.

The defendant clearly has the means to leave and not return. We have made reasonable accommodations with him as the investigation unfolded, but given that criminal charges have been filed against the defendant at this time we'd ask that he not be able to leave the country until this case is resolved.

MR. SCHUMACHER: May I respond, your Honor?

THE COURT: Yes.

MR. SCHUMACHER: Again, Judge, just to back up a little bit. Besides the fact that Mr. Bouaziz was aware of the investigation since December, I'll also point out to the court, this is not a case like we see many times in federal court where someone subjects individuals to fraud and then bankrolls his lifestyle. Mr. Bouaziz has conservatively, between the pieces of art that were already seized by the United States Attorney's Office, including an actual authentic Monet, art valued, it is somewhere between 10 and 15 million dollars.

Additionally, your Honor, the real properties that are here in the United States, not in LLC names but in his name individually, likewise with the bank accounts. This is not someone that has created a tier of fraud and structure to be able to obfuscate assets. This is a gentleman that worked all of his life, brought significant assets over from Israel, from

France, and that is where these assets came from.

The total amount of sales, we are in the process of doing his back taxes, your Honor, and I have explained that to the United States Attorney, but I have reason to believe that the total amount of sales, total amount of sales is $2 million from the gallery. I'm not suggesting, nor am I conceding, that $2 million was fraudulent or a portion of that being fraudulent or duplicate types of things passed off as originals, your Honor.

The reason why I mention that is because his home and The Castle alone, in addition to the 10 to 15 million dollars worth of artwork, that the government has in their possession, are here. They represent at least $10 million in value. Ten, maybe 11 million dollars in value, not to mention the other nine rental properties that he owns that he receives rent from. All of those are present here, and the government has the ability, should they choose to, to keep that, to make sure that those properties, besides an order that the court may give that he not pledge, sell or hypothecate, and if they chose to do that, that could be done at any point in time.

The reason why I mention that, your Honor, is that his entire life is here. All of his assets that he's worked for over his lifetime are here. He is simply asking to go back for a three-week period to Israel. I know it is unusual, but I think, Judge, that the total amount of assets being captive

here in the United States would provide about roughly $25 million worth of reasons for him to come back and answer to these charges.

Again, Judge, I realize it is not something that comes up everyday in connection with a case, and I also suggest to the court that the whole reason why we're here, at least on this date, is because of a request from the government to return one or more of those passports in order to facilitate the travel. He is not going anywhere. He's known about this. He surrendered himself today.

I will stand on that.

THE COURT: Very well argued on both sides.

Let me think about that for a second while I deal with the other conditions of the bond.

So I will accept the joint recommendation of the $500,000 10 percent bond. So Mr. Bouaziz is to deposit $50,000 into the registry of the court.

How much time does he need for that, Mr. Schumacher?

MR. SCHUMACHER: I have it presently, your Honor.

THE COURT: OK. In your pocket?

MR. SCHUMACHER: In my pocket, your Honor.

THE COURT: Good for you.

MR. SCHUMACHER: Not cash, Judge, but I do have a cashier's check.

THE COURT: OK. Very good.

What is his wife's name, Mr. Schumacher?
MR. SCHUMACHER: It is Sophia Baratashvili.
THE COURT: Can I ask her to come forward, please.
MR. SCHUMACHER: Come forward, please.
THE COURT: Good morning.
MS. BARATASHVILI: Good morning.
THE COURT: If you could raise your right hand, please.
Do you swear or affirm that any testimony you give here today will be the truth, the whole truth, and nothing but the truth?
MS. BARATASHVILI: Yes, sir.
THE COURT: You can put your hand down.
If you could state your full name.
MS. BARATASHVILI: Sophia Baratashvili.
THE COURT: Can you spell your last name for the record.
MS. BARATASHVILI: B-A-R-A-T-A-S-H-V-I-L-I.
THE COURT: Got it. Thank you.
So it is proposed that you will cosign on the bond for your husband. I just need to discuss with you what that means and to make sure that the record is clear that you understand the obligation you're taking on.
So the bond in this case is a half a million dollars. Your husband is going to post 50,000. So that means there is

$450,000 out there.

If he doesn't show up in court, you are going to owe the government $450,000. Meaning they don't have to go after his assets, they can come after you and your assets.

So, first of all, do you understand that is one of the financial consequences of signing?

MS. BARATASHVILI: Yes, sir.

THE COURT: OK. Because that is one of the financial consequences of signing, you are in essence taking on the obligation to make sure that he does what he's posed to do, that he shows up, that he complies with the conditions, because otherwise you are going to be at risk. So you understand that is the obligation you're taking on?

MS. BARATASHVILI: Yes.

THE COURT: And that may include, if he is not doing what he is supposed to do, telling the probation office so they can tell him to do the right thing.

Do you understand?

MS. BARATASHVILI: Yes, sir.

THE COURT: OK. Understanding that maybe the awkward position that you are put in, are you still willing to cosign on the bond?

MS. BARATASHVILI: Yes.

THE COURT: Now the other thing is, as a cosigner on the bond, and in order to make sure if the government ever has

to come after you for the money on this bond, I am going to order that you not sell, pledge, mortgage, hypothecate -- that is a fancy legal word for encumber -- put a lien on any of your property. So that may include, I understand you have a coffee business. So you are not going to be able to sell or mortgage or do anything with regard to your property as well.

Do you understand?

MS. BARATASHVILI: Yes, sir.

THE COURT: Now, obviously I am going to allow you and your husband the leeway to actually have living expenses and spend money to live day to day, but you're not going to be able to sell hard assets.

Do you understand that?

MS. BARATASHVILI: Yes.

THE COURT: Ms. Schall, anything else you think I need to inquiry of Ms. Baratashvili?

MS. SCHALL: If I just may have one moment, your Honor?

THE COURT: You may.

(Pause)

THE COURT: Don't get too close. The marshals get unhappy with you. He is coming home today. You can talk to him later.

(Pause)

THE COURT: Ms. Schall.

MS. SCHALL: I would just ask through the court if there was any recent purchase of a vehicle for the wife, if the defendant had recently purchased a vehicle for the wife, and if so, I'd ask that that not be able to be sold as well.

THE COURT: Well, I am going to encumber all of her hard assets, vehicles included.

MS. SCHALL: Thank you, your Honor.

THE COURT: So if she has an expensive car, she can't sell it without permission from the court.

Again, if there is a need for either of you to liquidate an asset, Mr. Schumacher is very experienced. He knows how to do this. He will file the paperwork and the court will address it. So I don't want you to think that you are going to have lots of assets that you can't touch and you are going to be unable to eat. So just understand how that works.

MS. BARATASHVILI: Yes, sir.

THE COURT: All right. Thank you, Ms. Baratashvili. You can have a seat.

MS. SCHALL: Thank you, your Honor.

MS. BARATASHVILI: Thank you.

THE COURT: Thank you.

So I am going to allow her to be the cosigner on the bond. I am satisfied with her testimony.

As I indicated -- let me go through the standard conditions and then I will go through the special conditions.

Standard conditions of bond, Mr. Bouaziz, are that you shall appear as required for all court appearances.

So I've set a hearing for the 15th. We can address it in a second. But if you are in the country, you are required to appear for that. You are required to appear for all future court appearances.

Do you understand?

MR. SCHUMACHER: You have to say yes.

THE DEFENDANT: Yes, I do.

THE COURT: If you fail to appear as required, you're committing a new crime, I'm going to revoke your bond, and a lot of really bad things are going to happen.

Do you understand?

THE DEFENDANT: I understand.

THE COURT: So you are under a court order to appear for all future court appearances.

Second, except as otherwise indicated, your travel is restricted to the Southern District of Florida, which is -- Mr. Schumacher will explain where that is, but that is basically Key West up to Sebastian Inlet, Vero Beach, and out to Lake Okeechobee.

You can travel within the United States with the prior permission of Pretrial Services, with one caveat. If this case is assigned to Judge Cannon after it is indicted, Judge Cannon approves all of her own bond modifications and travel. So if

it becomes a Judge Cannon case, that condition of bond will be modified and Pretrial Services will no longer have the authority to authorize travel outside of the district. If it is not assigned to Judge Cannon, all the other judges allow Pretrial Services to approve travel.

You are to reside at 228 Ninth Street, West Palm Beach.

Is that correct, Mr. Schumacher?

MR. SCHUMACHER: Yes, it is, Judge.

THE COURT: You will reside there, Mr. Bouaziz. You are not to move from that location without prior permission from Pretrial Services.

You are to cooperate in the collection of DNA, and you are not to violate any federal, state or local laws while on release, and you are to report any contact with law enforcement within 72 hours.

So what that means is if you get stopped for speeding, even if the police officer doesn't give you a ticket, you will have had contact with law enforcement and you need to report that to your Pretrial Services officer. I'm not saying anything bad is going to happen, but something bad will happen if you don't report it. But you need to report it even if it doesn't result in an arrest or anything else.

OK. As to special conditions of bond. I am going to order Mr. Bouaziz to surrender his passport and travel

documents and not to obtain any travel documents during the pendency of the case.

He is to report to Pretrial Services as directed, either in person, by phone, or as otherwise directed.

He is to not be employed in the art.

Well, is he allowed to be employed anywhere, Mr. Schumacher, given his Visa status?

MR. SCHUMACHER: He's not, your Honor. I would simply say, Judge, I would urge the court not to make that a condition. The government's had about five-and-a-half months to verify that there has been no additional transactions that have occurred. He employs people. He is permitted to employ people. They rely upon him being present. He owns these particular galleries. He has substantial assets in those galleries, your Honor. This would be a significant financial hardship on him and others that rely upon him, your Honor.

THE COURT: Right. I'm not sure I follow that. Why is his physical presence required?

MR. SCHUMACHER: Well, Mr. Bouaziz is somewhat of a personality on the Island, your Honor. Most of the reason why people come into his gallery is because of his status within the community, the contacts that he knows. Again, Judge, being the owner of such a business, he doesn't have that right-hand man or woman that is capable of coming in and specifically running that business for him, your Honor.

THE COURT: OK. Let me hear from the government. Why is an employment restriction a reasonable condition as it pertains to either risk of flight or danger?

MS. SCHALL: Well, your Honor, I think there are a couple of reasons. One, defense has proffered that the defendant has not been able to have sales, hasn't recently had sales since the execution of the search warrant. So the government's position would be there's no reason therefore for him to need to continue to operate the galleries.

The defense proffered also that the government has no information regarding additional sales. At this point in time the government cannot definitively say that. We can say that there were more victims than are noted in the complaint who have come forward to voice that they were essentially duped during the sale of what we now know to be fraudulent art.

If the court would allow it, I would also like to highlight that defense counsel has proffered that the art that was seized, an extensive amount of art was seized from the two galleries, the government is not agreeing that this is in fact actual legitimate art. We are still looking into that.

The piece that defense counsel has discussed, the purportedly $8 million Monet, the government would proffer to the court that it was recovered from a gallery where there was no security, there was no electronic security. It was in a small room within the gallery itself in a facility that was not

temperature controlled. These pieces of art are still being evaluated by experts to determine whether or not they were authentic pieces, but there is reason to believe, especially given the history that we have found with the defendant, that they were in fact also fraudulent pieces.

MR. SCHUMACHER: Your Honor, could I just respond to one thing on that, your Honor?

THE COURT: Sure.

MR. SCHUMACHER: Judge, just based upon the manner in which the criminal complaint is laid out, this is an instance where the government is saying, hey, listen, we have a sale record of Mr. Bouaziz purchasing certain items and reselling them at a very, very increased price, and obviously they're trying to suggest, your Honor, that they were not real pieces, that he knew that they were not real pieces.

This particular Monet, your Honor, I have seen the documentation and I can represent as an officer of the court -- it was provided by his civil attorney -- he paid approximately $5 million some time ago for that particular Monet, your Honor.

THE COURT: Here's what I am going to do. It seems to me that the reason we usually impose this sort of an employment restriction is the idea is that the person has been using their business to commit the crime and therefore we don't want them to be put back in a situation that allows for that.

I think there is a reasonable condition I can impose

short of employment restriction, and that is this. I am going to allow Mr. Bouaziz to continue to operate the gallery, but I am going to order that the government has access to the financial records of the gallery on a reasonable time and for reasonable purposes, not for the purpose of the government supplementing what it is already investigating in terms of past conduct, but in terms of allowing the government to make sure that if people are making purchases in the future --

MS. SCHALL: Yes, your Honor.

THE COURT: -- while Mr. Bouaziz is on bond that it is not a fraudulent transaction. I think that is protective of the interests of the court, allows Mr. Bouaziz to do what he needs to do, allows the government to do what it needs to do.

MS. SCHALL: Thank you, your Honor.

THE COURT: If it turns out that during that inspection the government believes ongoing fraud is occurring, the government can file the appropriate motion and I'll modify that condition. So that is what I will do.

He is to avoid all contact with victims or witnesses to the crimes except through counsel. I am directing the government to provide defense counsel and Pretrial Services with the names of anyone they deem to be a victim or a witness in this case, and that prohibition against contact does not take effect until that list is provided to Mr. Schumacher. The prohibition against contact applies only to those people on the

list, and that list can be supplemented but only doesn't take effect again until it is provided to Pretrial and the defense.

Mr. Schumacher.

MR. SCHUMACHER: Yes. Can I make one request, your Honor --

THE COURT: Sure.

MR. SCHUMACHER: -- on that particular issue. Many times it is ordered, and, again, I'm not referring to Ms. Schall at all in this case, but I have had other U.S. attorneys that are a bit remiss in terms of getting those names to us. So can we just set a time limit within which to provide that, your Honor?

THE COURT: I can, but I have just said until she provides it to you the condition doesn't take effect.

MR. SCHUMACHER: Understood. Understood, Judge.

THE COURT: OK.

MS. SCHALL: I can assure defense counsel that I will provide it as promptly as possible, presumably no later than Tuesday.

THE COURT: That is fine. I will give them a week, a week from today to provide the list.

MR. SCHUMACHER: Thank you.

MS. SCHALL: And we just ask, your Honor, obviously the defense will share that information with the defendant just for his awareness but not disseminate it beyond his

consultation with this client for that purpose.

THE COURT: That request is granted.

OK. I don't think there are any codefendants. So we don't have to worry about that.

Mr. Bouaziz, you are not to possess a firearm, destructive device or other dangerous weapon either at your home or at your place of employment. So no guns.

THE DEFENDANT: I'm fine, your Honor.

MS. SCHALL: Your Honor, there was a firearm used during the execution of the search warrant. It's still in the possession of the FBI.

THE COURT: OK. Don't get another one.

As I noted, Ms. Baratashvili as the signature on the bond may not sell, pledge, mortgage, hypothecate, encumber, etc. any real property or significant personal property, such as jewelry, car, etc., without prior permission from the court, and that same condition applies to Mr. Bouaziz.

The government indicates that it has some sort of a spreadsheet of the property that it believes should not be encumbered. If the parties can agree, I will incorporate that list into the bond, but at this point I don't have a list of exact properties. I think to the extent the parties can agree on a specific list of assets, that gives Mr. Bouaziz more clarity into what he can and can't do, but given that I don't have that list, all I have to say is all.

I realize that, Mr. Schumacher, that leaves some gray area, so I will encourage the parties to have further discussion about that. But no selling or encumbering assets.

MR. SCHUMACHER: Judge, I know that the court hasn't articulated a ruling on the motion to travel. I would just point out one additional thing in that regard, your Honor. Again, by inference maybe it has since it's already ordered him to give up his passport.

THE COURT: No, I haven't reached that. I haven't reached that bridge yet.

MR. SCHUMACHER: OK. In any case, Judge -- do you want me to wait on that then?

THE COURT: Well, let me finish going through what are going to be the conditions.

MR. SCHUMACHER: Yes.

THE COURT: I consider that an exception to an otherwise existing condition.

MR. SCHUMACHER: Yes, sir.

THE COURT: So I will certainly let you be fully heard.

I am not going to impose a new debt restriction. I understand your request, but I will deny that request.

As I've indicated, I am going to allow for a search of the defendant's business premises, and what are the specific addresses, Ms. Schall?

MS. SCHALL: You're talking about for the galleries, your Honor?

THE COURT: Yes.

MR. SCHUMACHER: 226A, Judge, and 230 Worth Avenue.

MS. SCHALL: Worth Avenue. That's correct.

THE COURT: So the premises -- this is for Pretrial Services -- 226, capital A, Worth Avenue and 230 Worth Avenue, Palm Beach.

I will allow the government to review the financial records of those businesses at a reasonable time and in a reasonable manner to ensure that there is no ongoing fraud occurring.

OK. Mr. Schumacher, do you want to be heard? Those will be the conditions subject to exception.

Before I go to the exception, any condition, from the government, any additional conditions that you haven't already requested that I haven't already ruled on?

MS. SCHALL: No additional restrictions. I would just note, though, we received information that the defendant was sold additional firearms, not just the one firearm that we recovered. If the defendant is in possession of any additional firearms, we'd ask that he speak with defense counsel and make arrangements to turn those over, and I will consult with defense counsel so that we can provide the court with a list of all the properties by next week as well.

THE COURT: That's fine. If you all are in agreement, just submit an agreed motion to modify the bond and incorporate that list.

MS. SCHALL: Yes, your Honor.

THE COURT: All right. In terms of firearms, as I said, I have ordered that Mr. Bouaziz is not to have possession of any firearms.

That is actual physical possession, Mr. Bouaziz, like holding it in your hand. It is this legal concept called constructive possession. Meaning if you are not holding it in your hand, if you have the ability and right to go and get it and use it, you're still possessing it.

So you saw I just put my phone down, right? I'm not holding it anymore, but I can pick it up any time. I'm still in possession. So you are not to possess any firearms.

Do you understand? OK.

Mr. Schumacher, do you want to be heard one last time on the international travel request?

MR. SCHUMACHER: Yes.

THE COURT: Refresh me again. There is a wedding of a nephew?

MR. SCHUMACHER: A wedding of his brother's son.

THE COURT: Brother's son. OK. And he wants to visit his mother.

MR. SCHUMACHER: Correct. That's it. He would be

staying with his brother the entire time. I provided that address. I provided the details of the wedding, including the invitation, with specific places, including the hotel where there is going to be a subsequent reception to the government.

The only thing additionally that I would suggest to that, your Honor, is that, again, Mr. Bouaziz has not made any attempts to hide assets. He worked very hard over the course of his life to amass those assets, and when he came here, he actually had two bank accounts, correct?

THE DEFENDANT: Yes.

MR. SCHUMACHER: Two bank accounts. The government's had access to those records both through grand jury subpoenas as well as documents that they retrieved from his residence.

I challenge the government to provide any information suggestive that there are any assets or large sums of money in any other location other than what he has here in the United States.

I mention that, your Honor, because the court's always concerned about if someone leaves, fine, maybe the assets that he has here are sufficiently encumbered to prevent him from accessing that to facilitate an escape from justice. But in this case there is no indicia of that in the bank records, your Honor, or that he has any offshore accounts at all, your Honor.

THE COURT: All right.

MS. SCHALL: Your Honor, if the government could just

respond. I can say that I in fact personally reviewed some bank records where there was at least some transactions to an account in Israel. This was prior to the -- I recall this being prior to the execution of the search warrant.

I would note as well that regardless of where an account is opened, an individual can have access to the monies within that account internationally. So the government would --

THE COURT: Thank you very much.

Look, in this district a request for international travel while on bond is an extraordinary request, and I recognize that. I'm sensitive to the desire to be with family. I'm sensitive to the desire to visit your elderly mother. But I am going to deny the request.

I think that it is a standard condition in this district across all defendants that you surrender your passport and there is no international travel. I just don't feel the evidence right now justifies making an exception to that broad policy in this district.

Mr. Schumacher, I know he will miss the wedding, but you can feel free to revisit that issue with the district judge once the case is assigned to a particular district judge. Maybe they will have a different comfort level than I do, and I certainly wouldn't be offended if you choose to do that.

MR. SCHUMACHER: Yes.

THE COURT: You have argued extremely well. You have given me a lot to think about. I just don't feel that I can make that exception in this case.

MR. SCHUMACHER: Understood.

THE COURT: I apologize, Mr. Bouaziz. You're not going to be able to go to the wedding. Hopefully you get this case resolved, it resolves favorably, and you can go see your mother quickly, but in the meantime I am going to deny that request.

MR. SCHUMACHER: I hope so, your Honor.

THE COURT: All right. Without waiving any objections that either side may have to the rulings I've made, Mr. Schumacher, anything else we need to do this morning?

MR. SCHUMACHER: No, your Honor.

THE COURT: Ms. Schall.

MS. SCHALL: Nothing further. I just ask that following the hearing if the defendant could be made available to submit to a DNA sample.

MR. SCHUMACHER: Of course, Judge.

THE COURT: Sure. OK.

MS. SCHALL: Thank you.

THE COURT: The last thing I think I do need to do today is order that the government shall produce to Mr. Bouaziz and his counsel any evidence falling under the purview of Brady v. Maryland.

Mr. Bouaziz, that is a Supreme Court case, and what it says is that the government must provide, and I'm ordering the government to provide, any evidence that tends to show you didn't commit this crime or any evidence that can be used to impeach the government's witnesses or any evidence that can be used to reduce punishment, in the event there is punishment in this case. So I am ordering the government to produce all that evidence. They must produce it even without a formal request by Mr. Schumacher. Failure to do so in a timely fashion could result in sanctions, including dismissal of the charges or contempt of court.

So with that, I will thank the parties. Extremely well argued today. I will excuse the parties in this matter.

MR. SCHUMACHER: Thank you, Judge.

MS. SCHALL: Thank you, your Honor.

THE COURT: Thank you.

(Adjourned)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription to the best of my ability of the digital audio recording in the above-entitled matter.

November 4, 2022

s/ Joanne Mancari
Joanne Mancari, RPR, CRR, CSR
Court Reporter
jemancari@gmail.com