UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-80099-AMC

UNITED STATES OF AMERICA

v.

DANIEL ELIE BOUAZIZ,

Defendant.
_______________________________/

# GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT AND REQUEST FOR A DOWNWARD VARIANCE

Comes now the United States, by and through the undersigned Assistant United States Attorney, and hereby responds to Defendant Daniel Elie Bouaziz's Objections and Factual Clarifications to the Draft Presentence Investigation Report ("PSR") (hereinafter referred to as the "Instant Motion") (DE 84).

## I. Guilty Plea

On February 21, 2023, Bouaziz pled guilty to money laundering (Count 17 of the federal indictment), in violation of 18 U.S.C. § 1957 (DE 72). Pursuant to the written plea agreement, the government agreed to dismiss the remaining counts after sentencing (id.). As part of the plea agreement, the government and the defendant agreed to jointly recommend that the Court make the following findings and conclusions as the sentence to be imposed:

(1) Loss: That the relevant amount of actual, probable or intended loss under Section 2B1.1(b)(1) of the Sentencing Guidelines resulting from the offense committed in this case is more than $550,000 but not more than $1,500,000 (id. at ¶ 8(1)).

The plea agreement (DE 72) explicitly set forth that the defendant agreed: that Count 17 involved his conduct from at least as early as December 2020 and December 15, 2021, related to his art fraud scheme; to forfeit all rights, title and interest in all assets which are subject to forfeiture; to a forfeiture money judgment in the sum of $200,000, which sum represents the value of the property involved in the offense of conviction; and to pay restitution to all victims of the fraudulent art scheme that constitutes relevant conduct in this case, as more fully described in the Purpose of the Scheme and Artifice and Manner and Means of the Scheme and Artifice sections of the Indictment.

In support of his guilty plea, the parties entered a signed, factual proffer into the record (DE 71). The proffer acknowledged the following:

Bouaziz was an art dealer and the owner of art galleries, to include Danieli Fine Art and Galerie Danieli, located at 226A and 230 Worth Avenue, respectively, in Palm Beach County in the Southern District of Florida.

Bouaziz and his businesses, to include VIP Rentals LLC ("VIP Rentals"), doing business as Danieli Fine Art, had bank accounts with TD Bank, N.A. ("TD Bank"). TD Bank was a financial institution based in Delaware whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC") and affected interstate commerce.

Bouaziz knowingly engaged in and attempted to engage in a monetary transaction, by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity. That unlawful activity is stipulated to be the sale of counterfeit art, using means of interstate commerce to carry out the sale and transfer of proceeds.

Specifically, on or about October 25, 2021, Bouaziz sold counterfeit artwork, to include pieces purportedly by artist Andy Warhol ("Warhol") to a victim (hereinafter referred to as "D.N.") out of his Palm Beach art galleries. Bouaziz had told "D.N." that the works that he was selling for between $75,000 and $240,000 were authentic, original Warhol pieces, and that some of the pieces were signed by the artist. Relying upon Bouaziz's false and fraudulent representations, "D.N." purchased artwork from the defendant.

On or about October 25, 2021, a $200,000.00 check from "D.N." (a down-payment for the art purchase) was deposited at a bank in West Palm, Florida into Bouaziz's TD Bank Account -9884 for the defendant's business VIP Rentals (Bouaziz was a signatory on the bank account). Before the check from "D.N." was deposited, Account -9884 had approximately $50,912 in available funds. On or about October 26, 2021, funds were comingled when $200,000.00 was transferred through a wire from Account -9884 to Bouaziz's personal TD Bank Account -3205 (for which Bouaziz is the sole signatory); and $50.000.00 was transferred by wire from Account -3205 back to Account -9884, and then money was sent by wire to other accounts. Bouaziz was in the Southern District of Florida, making credit card transactions, on or about October 25-26, 2021.

## II. Background, PSR, and the Instant Motion

### A. Background

As described in the PSR (¶¶15-106), art dealer Bouaziz, a French and Israeli citizen born in Algeria, sold and/or attempted to sell fake (fraudulent) art to unsuspecting victims from his various businesses, in particular Danieli Fine Art and Galerie Danieli, and laundered the illicit sales proceeds. Bouaziz represented to buyers that he was selling original/authentic pieces rendered by prominent artists, such as Jean-Michel Basquiat ("Basquiat"), Andy Warhol ("Warhol"), Banksy, and Roy Lichtenstein ("Lichtenstein"). Bouaziz purchased and acquired low-cost pieces that were not

original works of art (ie: reproductions) from sources, to include online auction sites, and then re-sold the pieces as originals, for drastically increased prices. Bouaziz represented to the victims that he was an official appraiser and art expert. Bouaziz knew some of the pieces he sold were not genuine and original pieces but were fabricated pieces that were "after," "attributed to," "in the manner of the artist," unauthorized prints, and/or other fraudulent artwork that were not rendered directly by the prominent artists.[1]

To make the fraudulent art appear authentic, Bouaziz made false representations to buyers regarding the provenance[2] and originality of the art. To support these false statements, Bouaziz, on occasion, for example: (1) provided buyers with invoices and documents that included false provenance information; (2) omitted descriptors that were included with low-cost online purchases, to include "after" and " reproduction" language; (3) sold buyers artwork on which an artist's signatures had been added; and (4) provided buyers with certificates of authenticity that included false assertions and appraisals which had a stamped signature block that read "Daniel Bouaziz, Certified International Fine Art Appraiser."

In addition, as noted in the PSR, Bouaziz sold fraudulent art to an undercover agent for $25,000 (DE 74: ¶¶ 21-38) and had discussed another sale to the undercover, of an artwork collection that was determined to include fraudulent pieces, for $22 million dollars (id. at ¶¶39-48).

---

[1] As described in the PSR, in the art world, the term "after" is used to describe a copy of an original artist 's work (DE 74: ¶ 38). "Attributed" indicates a lack of 100% certainty that a work is by the hand of the artist (id. at ¶ 71). "Manner of the artist" indicates that the work was done in the style of the artist but at a later date (id.).

[2] As described in the PSR, the provenance refers to the history of the ownership of a painting (DE 74: ¶ 17). A seller may misrepresent the provenance in an attempt to bolster the appearance of authenticity of the artwork (id.). The government submits that the provenance of a piece can also affect the value of the work of art.

Bouaziz was admitted to the United States as a visitor, without authorization to work (DE 74: ¶17).

**B. Initial PSR Calculations**

In the Initial PSR, probation calculated Bouaziz's total offense level to be 26 (with acceptance) based on the following: a Base Offense Level of 6, pursuant to § 2B1.1(a)(1); plus a 20-level increase if the loss was more than $9,500,000 but not more than $25,000,000, pursuant to § 2B1.1(b)(1)(K); an additional 2-level increase since the offense involved ten or more victims, pursuant to § 2B1.1(b)(2)(A)[3]; a 1-level increase since the defendant was convicted under 18 U.S.C. §1957, pursuant to § 2S1.1(b)(2)(A); and a 3-level decrease for acceptance of responsibility (DE 74: ¶¶ 126, 127, 133, 134). With Bouaziz's total offense level at 26 and criminal history category a I, the defendant's guideline imprisonment range is 63 to 78 months' imprisonment (id. at ¶¶ 126, 191).

With a base level of 6; a 14-level increase for an agreed upon loss of more than $550,000 and less than $1.5 million; a 2-level increase for an offense involving ten or more victims (as addressed below); a 1-level increase for the 18 U.S.C. §1957 conviction; and a 3-level decrease for acceptance of responsibility, Bouaziz's total offense level would be 20 and the defendant's guideline range would be 33-41 months in prison.

**C. The Instant Motion**

On May 16, 2023, Bouaziz filed the Instant Motion (DE 84), wherein he objected to the PSR's loss computation (and presumably argues that he should only receive a 14-level enhancement for the jointly recommended loss) and finding that he should receive a 2-level enhancement for 10

---

[3] Application notes of § 2B1.1 define victim as "any person [individuals] who sustained any part of the actual loss determined under subsection (b)(1)."

or more victims. Bouaziz did not object to the 1-level increase for his 18 U.S.C. §1957 conviction. In his motion, Bouaziz claims that, without the 2-level victim enhancement, his total offense level should be 17, with a criminal history category of I, and guideline range of 24-30 months (DE 84 at 2).[4]

## III. Argument

### A. The Parties Jointly Recommend that the Court Apply the Parties Agreed Upon Loss Amount

The parties jointly recommend that the Court find that the losses in this case are more than $550,000 but not more than $1,500,000 (DE 72). The losses would thereby be subject to a 14-level enhancement, rather than the 20-level enhancement referenced in the PSR. In this particular case, the government jointly makes this recommendation, not because the intended loss should be more, nor because Bouaziz was entrapped (the government refutes Bouaziz's claim that anyone was entrapped or that the negotiations were an attempt to "pump up sentencing numbers"). Rather, the discussions between the undercover agent and Bouaziz were not sufficiently far along for the purposes of a plea. The undercover agent and Bouaziz entered into preliminary conversations regarding the proposed sale of the artwork collection. Bouaziz identified specific works, that he offered to sell. Law enforcement executed the search warrants (on or about December 15, 2021) and seized evidence (artwork) before the sale could be effectuated. Some of the artwork that was listed for sale to the undercover agent was fraudulent. The fraudulent pieces were works purportedly by Georgia O'Keefe (offered for sale for $600,000), Basquiat (offered for sale for $12 million), and

[4] It appears that Bouaziz failed to add the 1-level increase for his 18 U.S.C. § 1957 conviction to his total offense calculation. Given that, the government believes the defendant's total offense level claim should be 18 (27-33 months' imprisonment), rather than 17.

Bansky (offered for sale for $120,000).[5]

**B. Credit Against Loss and Number of Victims**

Although it is not explicit in his filing, Bouaziz appears to argue that he should receive credit against the loss calculation for the money returned prior to the search warrant to customers "L.M." and "L.O." (DE 84 at 5). The government asserts that such credit is not merited in this matter. Further, Bouaziz objects to the consideration of three of the twelve victims outlined in the PSR (id. at 7-8). Specifically, Bouaziz objects to the inclusion of L.M. and L.O. as victims (id. at 7-8), claiming they merely entered into commercial transactions with the defendant. Bouaziz also objects to the inclusion of "J.S." as a victim, claiming that the price paid for the Lichtenstein reproduction was commercially reasonable (id. at 8). Bouaziz moves to strike the 2-level enhancement for 10 or more victims (id. at 8, PSR at ¶ 126). The government concedes that J.S. can be removed as a victim but maintains that Bouaziz should still receive a 2-level enhancement for victimizing more than 10 people.

The parties agree that Bouaziz sold L.M., L.O., and J.S. artwork (DE 84 at 4-5, 7-8). The government concedes that L.M. and L.O. were reimbursed their purchase price, prior to the execution of the search warrants at Bouaziz's galleries. J.S. was reimbursed his/her full purchase price, after the execution of the search warrants. The government further acknowledges that other victims (customers) have been reimbursed since the search warrants were executed (DE 74: ¶¶ 107-123).

---

[5] As an amendment to the Initial PSR, the government advised probation that the list prices for the confirmed fraudulent art prices totaled approximately $12,740,000 rather than $22 million (DE 74 ¶ 49).

The government submits that the standard for excluding a dollar figure from the loss calculation is specific to loss and does not exclude the victimization of a person because he/she is repaid. U.S.S.G. § 2B1.1 comment (n. 3(E)) indicates that loss shall be reduced by: (a) "the money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected. The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency." Accordingly, financial reimbursement does not affect a victim's status. Nevertheless, even if the aforementioned standard could be used to eliminate a person as a victim, it does not apply to victims in this matter, specifically customers L.M. and L.O., as explained below.

On or about April 6, 2021, Victim L.M. (DE: ¶¶77-81) purchased purportedly original works by Frederick Hundertwasser and Jean Metzinger, from Bouaziz, for $120,000. L.M. reported to the FBI that Bouaziz said he only sold authentic pieces. L.M. further noted that even someone that knows art could be fooled by Bouaziz. At the time of the purchase, L.M. had a hunch the pieces were not right. Bouaziz informed L.M. that he/she would get his/her money back if L.M. was unhappy with the purchase. After the purchase, L.M. reviewed the artwork with friends and ultimately determined that the two pieces L.M. purchased from Bouaziz were fake. L.M. brought the pieces back to Bouaziz and said to Bouaziz that Sotheby's was not able to authenticate the artworks. L.M. did not actually bring the pieces to Sotheby's for authentication; however, L.M. made the statement to make sure L.M. received a refund for the fake artwork. Victim L.M. returned the artwork to Bouaziz and, on or about August 3, 2021, received a full refund.

During the execution of the search warrants, law enforcement identified records related to Bouaziz's sale to Victim L.M. The investigation revealed, for example, that Bouaziz had paid $300 to an on-line auction for artwork that was identical in image to the Hundertwasser that Bouaziz sold Victim L.M. However, although the on-line piece was described as "wall art" and "home décor" these low-value descriptors were absent from the victim's invoice and the piece's provenance.

On or about April 23, 2021, Victim L.O. (DE 74: ¶¶ 68-72) purchased, from Bouaziz, four pieces of artwork, to include a purportedly original Keith Haring ("Haring") and two purportedly original, limited-edition Lichtenstein pieces, for a total of $290,000. Thereafter, L.O. travelled to an art gallery in New York and showed his/her contacts the "Holy Grail" of his/her collection (the pieces he purchased from Bouaziz's gallery and was led to believe were original works). The victim discovered numerous discrepancies with the art that appeared to indicate the pieces were fraudulent. The victim returned the artwork to Bouaziz and was reimbursed in full on or about November 2021. As reported to the FBI, when Victim L.O. made the return, L.O. told Bouaziz he/she was uncomfortable with the purchase. Bouaziz did not ask L.O. why he/she was uncomfortable but said he stood by his product. Some of the artwork Victim L.O. purchased and returned were seized during the execution of the search warrants.

On-line auction records showed, for example, that Bouaziz purchased artwork identical in image to what he sold L.O., for a fraction of the cost and without the full disclaimers (ie: Bouaziz purchased an "attributed or manner of the artist" Haring for approximately $324 and sold a purportedly original Haring to L.O. that he appraised for $265,000).

Accordingly, the government submits that L.M. and L.O. were victims of Bouaziz's fraud scheme, not simply customers who entered into commercial transactions as Bouaziz alleges.

Although Bouaziz claims he offered his clients the right to return any item without question within five years and receive their money back, plus five percent (DE 84 at 6-7), this purported disclaimer was not included in all sales. Even if it had been, this disclaimer does not negate criminality. The evidence indicates Bouaziz knowingly sold L.M. and L.O. fraudulent art. Money was only returned to Victims L.M. and L.O. because they detected (suspected) fraud and returned the artwork they purchased. Harm can be brief and remedied, albeit still actionable. Accordingly, the money that was reimbursed to the victims, prior to the execution of the search warrant, should be included in the loss calculation. In the event that the Court rules otherwise, the government submits that credits against the loss ($120,000 for L.M. and $290,000 for L.O.) will maintain the loss in the agreed upon recommended range of $550,000 to under $1.5 million.

Bouaziz's final objection relates to the inclusion of J.S. as a victim (DE 74: 73-76). On or about April 27, 2021 "J.S." purchased a Lichtenstein Collage for Interiors print for $9,000. Thereafter, J.S. purchased a second Lichtenstein print from Bouaziz for $5,000. Bouaziz claimed that the price paid was a commercially reasonable one (DE 84 at 8). After the search warrant, Bouaziz reimbursed J.S. in full for his purchases. A witness advised the FBI that the Collage for Interiors print that Bouaziz sold J.S. was an unauthorized reproduction of the Lichtenstein painting Collage for Interiors. The government concedes that it is not known where Bouaziz purchased the prints. Given that the government cannot prove that Bouaziz knowingly sold unauthorized reproductions to J.S., the government hereby agrees to remove J.S. as a victim.

**C. Bouaziz Victimized 10 or More Customers**

Bouaziz victimized ten or more customers with his fraudulent art scheme. He sold victims on his purported art expertise and flashy ways, selling out of his galleries on high-end Worth Avenue.

Notwithstanding, the exclusion of J.S. from the victim list, at least 11 victims remain, so the 2-level victim enhancement should apply.

Throughout the pendency of this matter, the government has provided Bouaziz and probation with information related to victims, complaints, losses, and restitution. For example, the parties were recently provided with an appraisal identifying art that customer “E.W.” purchased from Bouaziz (to include a replica and piece that was not by the hand of an artist) and seeks to return for a refund.

Bouaziz should be held accountable for his deception with a sentence of incarceration. Victim L.G. best summarized the impact of Bouaziz’s crimes when he wrote to the FBI, “I read about Kevin Bacon and Steven Speilberg being duped by Madoff. Though it didn't really make me feel better, there is some solace in knowing I can be included with the likes of Speilberg, though not for remarkable accomplishments and contributions to our society, but for being fooled by a greedy scrupulous fellow congregant.”

*[The remainder of this page was intentionally left blank.]*

## IV. CONCLUSION

For the foregoing reasons, the United States jointly recommends that the Court apply the agreed upon loss enhancement. The United States further requests that the Court reject Bouaziz's objection and impose a 2-level enhancement for his victimization of 10 or more individuals. Finally, the United States requests that the Court impose a sentence at the low-end of the guideline range.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: /s/ Sarah J. Schall
SARAH J. SCHALL
ASSISTANT UNITED STATES ATTORNEY
District Court No. A5501805
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: (786) 360-9896
sarah.schall@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 20, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Sarah J. Schall
SARAH J. SCHALL
Assistant United States Attorney